[No. B112161. Second Dist., Div. Four. Aug. 27, 1997.]

In re BREQUIA Y. et al., Persons Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND
FAMILY SERVICES, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
DEBORAH W., Real Party in Interest.

## COUNSEL

De Witt W. Clinton, County Counsel, Holly Bryan and Jill Regal for Petitioner.

No appearance for Respondent.

Randall Pacheco, Marlene Furth and Lisa K. Rozzano for Real Party in Interest.

## OPINION

BARON, J.—  In this juvenile dependency case, the Los Angeles County Department of Children and Family Services (DCFS) challenges the court's order providing a mother with an additional six months of reunification services. On June 19, 1997, we issued our alternative writ ordering the juvenile court to vacate its order extending family reunification beyond the maximum 18-month reunification period set forth in Welfare and Institutions Code section 361.5, subdivision (a)(2)[1] and make a new and different order terminating the family reunification plan and setting a hearing pursuant to section 366.26 or, in the alternative, to show cause why a peremptory writ of mandate ordering the court to do so should not issue.

Upon review of the response filed by Deborah W., the minors' mother, the reply filed by DCFS, and the evidence presented at the permanency planning hearing, and for the reasons we shall explain, we conclude that the court abused its discretion in ordering additional reunification services. We, therefore, grant DCFS's petition for extraordinary relief.

---

[1]All further statutory references are to the Welfare and Institutions Code.

### Summary of Facts

Minor, Brequia Y., was seven years old and her brother, Corey Y., was two years old when they were removed from the custody of their mother, Deborah W. (mother) on April 4, 1995.[2] Mother was incarcerated and the minors were detained in the home of their maternal aunt. A petition alleging that Corey had been left alone without any supervision, that mother was a user of alcohol which rendered her incapable of providing regular care of the minors, the father's identity and whereabouts were unknown, and that mother entered a plea of guilty to child endangerment was sustained under section 300, subdivisions (b) and (g). On April 27, 1995, the minors were ordered suitably placed and the court ordered mother to participate in and complete a program of counseling, including parenting and alcohol counseling.

By October 26, 1995, mother had made sufficient progress in her alcohol treatment and parenting skills to the extent that the court granted mother a 60-day trial visit with the children in the home of their maternal grand-mother, Helen W. (grandmother). On December 18, 1995, the children were placed in the home of mother who lived with grandmother, based upon the children's social worker's report that mother was providing the children with appropriate care, the minors appeared to be strongly bonded to their mother and grandparents and mother was attending Alcoholics Anonymous (A.A.) meetings four times per week.

However, mother was unable to maintain her sobriety and resumed her abuse of alcohol. A supplemental petition, filed February 6, 1996, pursuant to section 387, alleged, "mother's periodic use of alcohol renders mother incapable of providing regular care for the minors. Further, minors' mother's use of alcohol endangers minors' physical safety and/or emotional well-being and creates a detrimental home environment." The supplemental petition was sustained and the children were once again detained in the home of their aunt and subsequently suitably placed in their grandmother's home, where they remain.[3] Again, on September 11, 1996, mother was ordered to participate in parenting and alcohol counseling, and mother was permitted monitored visits.

On May 12, 1997, the matter was placed on calendar for a contested permanency planning hearing (PPH). (§ 366.22.) The court received into evidence the social study report dated March 12, 1997, and the supplemental

---

[2] According to the detention report submitted to the juvenile court by the DCFS, Brequia previously had been declared a dependent of the court. Jurisdiction had terminated on August 20, 1992.

[3] Mother was no longer residing with grandmother.

report prepared for the May 12 hearing. The children's services worker (CSW), Elsa Poyatos-Barajas, who had been assigned the case on August 6, 1996, had prepared the reports testified to at the hearing. Grandmother also was called as a witness.

The CSW recommended that (1) the court order DCFS to provide permanent placement services for the minors, (2) the minors be referred for adoptive planning, and (3) the case be placed on the appearance calendar of July 12, 1997, for a hearing pursuant to section 366.26 to consider termination of parental rights so that DCFS could proceed with adoptive planning.

The evidence in support of the permanent plan recommended by the CSW proved that mother had enrolled in four alcohol counseling programs and had not completed any of them. Mother was enrolled in the Flossie Lewis residential program from March 1996 to June 1996, and appeared to stay sober, but was asked to leave the program for not following the rules. Mother then enrolled in the Stork Club, Options for Recovery outpatient program from August 6, 1996, through September 25, 1996, at which time she was discharged from the program for coming to the program under the influence, which had been a continual problem. On October 4, 1996, mother enrolled in the Woman to Woman outpatient program and was discharged on October 19, 1996, because she tested positive for alcohol. Six months later, on April 2, 1997, mother enrolled in the Charles Drew Place, a family alcoholism program, which is a twelve-month recovery program, meaning that if reunification services were continued for another six months, mother would be unable to complete the program within that time period. Approximately a month before the PPH hearing, family members reported to the CSW that mother had been intoxicated. One of the reports was from mother's adult daughter with whom mother had been living. Within a month and a month and a half prior to the PPH, the adult daughter "had kicked mother out reportedly because of continuous alcohol use." Grandmother testified that about a month prior to the PPH, in April 1997, mother had been drinking before she arrived at the house to visit the children. Similarly, in January 1997, mother had been drinking. Mother never drank in front of the children but would drink beforehand and arrive for visits in an intoxicated condition. The children were doing very well in grandmother's home and grandmother was interested in adopting them.

Mother presented evidence which was contained in the CSW's March 12, 1997 report, that she had been attending A.A. from September 30, 1996, through February 3, 1997, but the CSW was unable to verify such attendance as A.A. is a self-help group. Mother also informed the CSW that she had been sober since September 20, 1996, which was belied by the October 25,

1996, toxicology report which detected alcohol in mother's system. Mother also stated that she visited the children at the grandmother's home several times a week and would visit every day if she and grandmother did not " 'get into it a lot.' " Brequia told the CSW, " 'If I can't go home with my Mom, I want to live with my other Auntie.' " Corey was too young to make a meaningful statement.

On this evidence, and over the objection of DCFS and counsel for the minors, both of whom urged the court to proceed immediately with the permanency planning, the court ordered DCFS to provide an additional six months of reunification services for mother. The court found that "there has been substantial compliance on the mother's part, and I think we have to remember that many times, even though the—the results that we seek may not be there, I think in this case we have to consider the efforts by the mother to try and at least attempt these programs, if not complete the programs. [¶] . . . [¶] . . . [S]he is still going to A.A. . . . [and] completed a parenting program. So to say that the mother has done nothing, I think, would be a disservice to the mother. I think that she has tried to comply, even though she has not been able to complete an alcohol abuse counseling program."

## DISCUSSION

The provisions of the dependency law which guide our decision are sections 361.5, 366.21, 366.22 and 352. We therefore quote from the pertinent parts of those sections at length with special emphasis on the language most applicable to this case.

Section 361.5 provides: "(a) Except as provided in subdivision (b) . . . whenever a minor is removed from a parent's . . . custody, the juvenile court shall order the probation officer[4] to provide child welfare services to the minor and the minor's parents . . . for the purpose of facilitating reunification of the family as follows: [¶] (1) For a minor who, on the date of initial removal from the physical custody of his or her parent . . . , was *three years of age or older,* court-ordered services shall not exceed a period of *12 months.* [¶] (2) For a minor who, on the date of initial removal from the physical custody of his or her parent . . . , was *under the age of three years,* court-ordered services shall not exceed a period of *six months.* [¶] However, court-ordered services may be extended up to a *maximum period not to exceed 18 months* if it can be shown that the objectives of the service plan can be achieved within the extended time period. The court shall extend the

---

[4]In Los Angeles County, the probation officer's duties are performed by CSW's employed by the DCFS.

time period *only* if it finds that there is a *substantial probability* that the minor will be returned to the physical custody of his or her parent . . . within the extended time period or that reasonable services have not been provided to the parent. . . . If the court extends the time period, the court shall specify the factual basis for its conclusion that there is a substantial probability that the minor will be returned to the physical custody of his or her parent . . . within the extended time period. The court also shall make findings pursuant to subdivision (a) of Section 366.[5] When counseling or other treatment services are ordered, the parent . . . shall be ordered to participate in those services . . . . Physical custody of the minor by the parents . . . during the 18-month period *shall not serve to interrupt the running of the period.* If at the end of the 18-month period, a minor cannot be safely returned to the care and custody of a parent . . . without court supervision, but the minor clearly desires contact with the parent . . . , the court shall take the child's desire into account in devising a permanency plan. [¶] (b) Reunification services need not be provided to a parent . . . described in this subdivision when the court finds, by clear and convincing evidence, any of the following: [¶] . . . [¶] (12) That the parent . . . of the minor has a history of extensive, abusive, and chronic use of . . . alcohol and has resisted prior treatment for this problem during a three-year period immediately prior to the filing of the petition which brought that minor to the court's attention, *or has failed* or refused *to comply with a program of . . . alcohol treatment described in the case plan* required by Section 358.1 *on at least two prior occasions, even though the programs identified were available and accessible.* [¶] (c) . . . [¶] The court shall not order reunification for a parent . . . described in paragraph . . . (12) of subdivision (b) *unless the court finds, by clear and convincing evidence, that reunification is in the best interest of the minor.*" (Italics added.)

Section 366.21, subdivision (g) provides: "If the time period in which the court-ordered services were provided has met or exceeded the time period set forth in paragraph (1) or (2) of subdivision (a) of Section 361.5, as appropriate, and a minor is not returned to the custody of a parent . . . , the court shall do one of the following: [¶] (1) Continue the case for up to six months for another review hearing, *provided that the hearing shall occur within 18 months of the date the minor was originally taken from the physical custody of his or her parent.* . . . The court shall continue the case *only* if it finds that there is a substantial probability that the minor will be returned to the physical custody of his or her parent . . . within six months . . . ." (Italics added.)

---

[5]Section 366 requires the court to conduct periodic reviews at least once every six months from the date of the original disposition hearing, until the section 366.26 hearing to terminate parental rights is completed.

Section 366.22 provides: "(a) When a case has been continued pursuant to paragraph (1) of subdivision (g) of Section 366.21, the court, at the 18-month hearing, shall order the return of the minor to the physical custody of his or her parent . . . unless the court finds, by a preponderance of the evidence, that the return of the minor to his or her parent . . . would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the minor. The probation officer shall have the burden of establishing that detriment. *The failure of the parent . . . to participate regularly in court-ordered treatment programs shall be prima facie evidence that return would be detrimental.* In making its determination, the court shall review and consider the probation officer's report and recommendations and the report and recommendations of any child advocate appointed pursuant to Section 356.5; shall consider the efforts or progress, or both, demonstrated by the parent . . . and the extent to which he or she availed himself or herself of services provided; and shall make appropriate findings pursuant to subdivision (a) of Section 366. Whether or not the minor is returned to his or her parent . . . , the court shall specify the factual basis for its decision. If the minor is not returned to a parent . . . , the court shall specify the factual basis for its conclusion that return would be detrimental. [¶] *If the minor is not returned to a parent . . . at the 18-month hearing, the court shall develop a permanent plan.* The court *shall* order that a hearing be held pursuant to Section 366.26 in order to determine whether adoption, guardianship, or long-term foster care is the most appropriate plan for the minor. . . . The hearing shall be held no later than 120 days from the date of the 18-month hearing. *The court shall also order termination of reunification services to the parent.* The court shall continue to permit the parent to visit the minor unless it finds that visitation would be detrimental to the minor." (Italics added.)

Section 352 provides: "(a) Upon request of counsel for the parent . . . , the court may continue any hearing under this chapter beyond the time limit within which the hearing is otherwise required to be held, provided that *no continuance shall be granted that is contrary to the interest of the minor.* In considering the minor's interests, the court shall give *substantial* weight to a minor's *need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements.*" (Italics added.)

There are circumstances in which appellate courts have permitted reunification services to continue beyond the 18-month statutory period. For example, in *In re Dino E.* (1992) 6 Cal.App.4th 1768 [8 Cal.Rptr.2d 416], no reunification plan was ever developed for the father, thus the appellate court ordered such services to be provided. In *In re Daniel G.* (1994) 25

Cal.App.4th 1205 [31 Cal.Rptr.2d 75], the juvenile court characterized the reunification services offered to the mother as a " 'disgrace,' " but felt constrained to order a hearing on a permanent plan because the 18-month hearing date had arrived. The appellate court reversed to give the juvenile court the opportunity to properly exercise its discretion to continue reunification services. (*Id.* at p. 1209.) Another extreme example is the case of *In re Elizabeth R.* (1995) 35 Cal.App.4th 1774 [42 Cal.Rptr.2d 200]. There, the mother had been hospitalized during most of the 18 months, yet she had substantially complied with the reunification plan and her record of visitation was exemplary. The appellate court reversed the judgment terminating the mother's parental rights and remanded the case to permit the juvenile court to exercise its discretion under section 352 to continue reunification services. (35 Cal.App.4th at pp. 1777-1778.)

We find neither exceptional circumstances nor any substantial evidence in the present case which support continuation of reunification services. Here, by the time of the PPH, the minors had been removed from their mother's custody for approximately 25 months, during which period mother had been unable to maintain a sober lifestyle, had been discharged from 3 alcohol abuse programs and had only just begun her fourth alcohol abuse program. No evidence was presented that an additional six months of reunification services would benefit the minors. In fact, the evidence proved that even with an additional six months of uninterrupted alcohol counseling mother will not be able to complete her program as her counseling program is a twelve-month program. An additional six months of counseling will mean the minors' lives are still not permanently settled after thirty-one months of reunification services.

■ Evidence sufficient to support the court's finding "must be 'reasonable in nature, credible, and of solid value; it must actually be *"substantial"* proof of the essentials which the law requires in a particular case.' " (*Kruse v. Bank of America* (1988) 202 Cal.App.3d 38, 51 [248 Cal.Rptr. 217], italics added.) "Where, as here, a discretionary power is inherently or by express statute vested in the trial judge, his or her exercise of that wide discretion must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. [Citations.]" (*People v. Jordan* (1986) 42 Cal.3d 308, 316 [228 Cal.Rptr. 197, 721 P.2d 79], italics in original; see also *People v. Fudge* (1994) 7 Cal.4th 1075, 1105 [31 Cal.Rptr.2d 321, 875 P.2d 36].)

■ We find the court's decision fits within the exception. The court acted arbitrarily by ordering continued reunification services for an additional six months without considering the needs of the children for stability

in their lives and a prompt resolution of their custody status and without any evidence that the children could be returned to the mother at the conclusion of the additional six-month period. ■ "The objective of the dependency scheme is to protect abused or neglected children and those at substantial risk thereof and to provide permanent, stable homes if those children cannot be returned home within a prescribed period of time. [Citations.] Although a parent's interest in the care, custody and companionship of a child is a liberty interest that may not be interfered with in the absence of a compelling state interest, the welfare of a child is a compelling state interest that a state has not only a right, *but a duty*, to protect. [Citations.] The Legislature has declared that California has an interest in providing stable, permanent homes for children who have been removed from parental custody and for whom reunification efforts with their parents have been unsuccessful. [Citations.]" (*In re Marilyn H.* (1993) 5 Cal.4th 295, 307 [19 Cal.Rptr.2d 544, 851 P.2d 826], italics added.) ■ The court's order of continued reunification services in this case thwarts that legislative purpose without any showing that it is in the best interest of the minors which resulted in a manifest miscarriage of justice.

## DISPOSITION

Let a peremptory writ of mandate issue directing respondent to vacate its order extending the reunification services for an additional six months, and to enter a new and different order terminating the family reunification plan and setting a hearing pursuant to section 366.26 forthwith.

Vogel (C. S.), P. J., and Epstein, J., concurred.